## STATE OF IOWA v. JOHN WALKER, Appellant.

**Murder:** EVIDENCE: DECLARATIONS OF A THIRD PERSON. Declarations
1  of a third person indicating that he had procured defendant to
commit the crime, not a part of the *res gestæ*, are inadmissible as
independent evidence, and are not admissible at all, unless there is·
some other evidence tending to show a conspiracy previously
formed between the declarant and defendant, for .the commission
of the crime.

**Declarations of co-conspirator:** PROOF OF CONSPIRACY. As a general
2  rule, it is discretionary with the trial court to permit proof of the
declarations of a co-conspirator, before a *prima facie* case of con-
spiracy has been made, on the promise of the State to introduce
such *prima facie* evidence later, but the safer procedure is to
require proof of conspiracy in the first instance.

**Evidence:** CONSPIRACY. Evidence independent of the declarations of
3  a co-conspirator considered, and held insufficient to make a *prima
facie* case of conspiracy to commit murder.

**Same.** Conspiracy may be shown by circumstantial evidence, but it is
4  not enough that it tend simply to create a suspicion.

**Declarations of co-conspirator:** ADMISSIBILITY. The sufficiency of
5  the proof of conspiracy, to admit the declarations of a co-con-
spirator, is to be determined by the court in passing upon the
admissibility of the declarations.

**Declarations of co-conspirator:** FAILURE TO PROVE CONSPIRACY.
6  Where the declarations of a co-conspirator were admitted,
over objection, prior to proof of conspiracy, the court, on fail-
ure to make a *prima facie* case of conspiracy, should on its own
motion have instructed the jury not to consider the declarations.

**Declarations of co-conspirator:** ADMISSIBILITY. The declarations of
7  one conspirator are not admissible against another, unless made in
furtherance of the unlawful purpose.

**Submission of improper evidence.** Though there may be sufficient
8  competent evidence to support a conviction, defendant is entitled·
to a verdict free from any prejudice arising from the submission
of improper evidence, and the appellate court cannot say that the
jury ignored that which was incompetent in arriving at a verdict.

*Appeal from Polk District Court.*— HON. JOSIAH GIVEN,
Judge.

### TUESDAY, JULY 12, 1904.

DEFENDANT was indicted for the crime of murder in the first degree, and on trial by a jury he was convicted of manslaughter, and sentenced to imprisonment in the penitentiary for the term of eight years. From this sentence he appeals. — *Reversed.*

*Charles Mackenzie, J. B. Rush* and *John T. Mulvaney,* for appellant.

*Charles W. Mullan,* Atty. Gen., *Jesse A. Miller,* and *Robert O. Brennan,* for the State.

McCLAIN, J.— About 10 o'clock in the evening of August 5, 1902, one Isaac Finkelstein was found lying on the north side of East Walnut street, in the mouth of the alley between East Sixth and Seventh streets, in Des Moines, with one side of his head mashed, apparently by a club of some kind, and he died within a few minutes after he was found. One Harris Levich, and the defendant, John Walker, the latter being a colored man, were indicted for the crime of murder in causing the death of Finkelstein. Levich was tried first and acquitted.

Subsequently, when this defendant was tried, the prosecution, after proving the *corpus delicti,* and introducing evidence tending to show that the mortal wound on the head of the deceased had probably been inflicted with a singletree (found lying in the alley near the body of Finkelstein) that had apparently been taken from a wagon belonging to Harris Levich, which was discovered in an alley about a block away, and showing the facts as to the arrest of the defendant Walker, the next morning in West Des Moines, and before any evidence whatever had been introduced tending directly to connect defendant with the commission of the crime, sought to show by witnesses. that prior

1. EVIDENCE: declarations of a third person.

to the time of the commission of the crime, Levich had made declarations, not in the presence of Walker, indicating the employment by him of Walker to " do up " Finkelstein. This testimony was objected to, on the ground that, in the absence of evidence tending to show conspiracy between Levich and the defendant, the declarations of Levich were not admissible as against the defendant. The following colloquy was then had, as appears from the record, between the trial judge and the attorney for the prosecution: " State: We claim two grounds upon which we have a right to declarations of Levich in the absence of Walker: First, that this was just a short time preceding the murder; second, they having been much together, and having been seen together at so short a time before the fatal blow was struck. Court: Will the evidence sought to be elicited here have any tendency to prove conspiracy itself? State: We think it would, and that is the object and purpose of this evidence. Court: Then we need not trouble much about other rules. I think the rule is this: that where the prosecution relies, in part at least, upon conspiracy, before we can charge either party with the declarations of the other, the State may be required to first give in evidence some testimony of the conspiracy, or it may be permitted to introduce the evidence, and it will be left or taken from the jury according as they follow it with evidence of some conspiracy. Whether there be evidence to go to the jury may be a question. But if the declaration itself preceded the act, and tends to establish conspiracy, then it is admissible, regardless of either of the rules. . Therefore the objection will be overruled." The prosecution was then allowed, over the defendant's objections, to show declarations of Levich tending to establish the fact that Levich had arranged with the defendant to inflict death or severe bodily injury upon Finkelstein, and that Levich made this arrangement in a spirit of revenge, by reason of real or fancied injuries done to him and his business by Finkelstein. It seems from the colloquy above set out that the prosecution was contending that the fact that such

a declaration was made by Levich just a short time preceding the commission of the crime would render the declaration admissible, and that the trial judge seemed to entertain the view that the fact of conspiracy, which must be established to make the declarations of Levich admissible, might be taken as established by such declarations alone, although no other evidence of conspiracy should be introduced. Perhaps the position taken by the prosecution and the trial judge are not accurately represented in the colloquy. However this may be, it is plain that unless the declarations were part of the *res gestæ* they were not admissible as independent evidence, and could not be considered at all without there was some evidence, apart from the declarations themselves, tending to show a conspiracy previously entered into between Levich and defendant with reference to the commission of the crime.

The first contention on behalf of defendant is that the court should have required the conspiracy to be proven by

2. DECLARA-TIONS OF CO-CONSPIRATOR: proof of conspiracy.

independent evidence before receiving the declarations. With reference to this question, the contention for the State is that it is within the discretion of the trial court to admit proof of acts and declarations of joint conspirators even before a *prima facie* case of conspiracy has been made, provided the State promises in the further progress of the trial to introduce such *prima facie* evidence; and such a rule seems to have been announced in broad terms in *State v. Grant,* 86 Iowa, 216, and *State v. Mushrush,* 97 Iowa, 444. We have no occasion to question the correctness of this general proposition, but in the first place it does not appear from the record that in this case the State made any such promise. So far as we can gather, the assertion on the part of the prosecution was that the declarations of Levich which were to be proven would tend to show a conspiracy. This clearly would not be enough, for, as already stated, and as the rule unquestionably is, the evidence tending to show a conspiracy must be outside of and in addition to the declarations of the co-conspirators whose declarations are sought to be

introduced. The safer rule, undoubtedly, is to require the proof of conspiracy to be made before the declarations are allowed to be shown. With reference to this question, we quote the following pertinent language: " Sometimes, for the sake of convenience, the acts or declarations of one [conspirator] are admitted in evidence before proof of the conspiracy has been given, the prosecutor undertaking to furnish such proof in the subsequent stage of the cause. But this method of proceeding rests in the discretion of the judge, and in seditions or other general conspiracies is seldom permitted, except under particular and urgent circumstances. If it were, the jury might be misled to infer the fact of the conspiracy from the declarations of strangers." 2 Taylor, Evidence (Chamberlayne's Ed.) section 591. And see Abbott, Trial Evidence (2d Ed.) 238. We think it would have been better in this case for the trial court to insist that some evidence of a conspiracy be introduced by the prosecution before allowing the declarations of Levich to be shown. Those declarations were so likely to prejudicially affect the minds of the jury with reference to the defendant that no subsequent action of the court in striking them out and directing the jury not to consider them could free the jurors' minds of the prejudicial result, should it subsequently appear that there was no evidence whatever, aside from the declaration of Levich himself, that defendant had entered into an arrangement with Levich to do violence to Finkelstein. We would not reverse the case on this ground alone, had there been independent evidence of a conspiracy such as to make out a *prima facie* case, but in view of a new trial we feel justified in suggesting that it will be difficult to adequately protect the right of defendant to be tried only on competent evidence without requiring a *prima facie* case of conspiracy to be made out before the declarations of Levich are received. That the defendant should not be convicted on mere heresay evidence as to his having been procured to commit the crime is so plainly manifest as a rule of justice, appealing to the common sense of all right-thinking

persons, that further discussion of the rule as applicable to this case is unnecessary.

It is further contended for the defendant that, without regard to the order of procedure, there is no competent evidence in the record tending to show a conspiracy between Levich and Walker, aside from the declarations of Levich himself. The only facts shown which have the slightest tendency, independently of the declarations of Levich, to show a conspiracy or agreement between Levich and the defendant with reference to any injury to be done to Finkelstein, are as follows: One witness testified that on the evening on which the crime was committed, and a few hours prior thereto, he was talking with Levich, and Levich was making some statement as to having employed a colored man to do injury to Finkelstein, when defendant stepped up and said he had been to see Levich the evening before; in response to this Levich said nothing, but nudged the witness. Another witness testified to seeing defendant in front of Hyman Levich's cigar store, near the place where the crime was committed, and it appears that Harris Levich was frequently about Hyman Levich's store. Another witness testified to seeing defendant and Levich walking together along the street about nine o'clock on the evening of the crime; and another witness testified to seeing Levich talking to defendant at a place some distance from the locality where the crime was committed, and at a later hour in the evening, and that Levich took defendant away with him in a buggy. We think this evidence is not sufficient to make out a *prima facie* case of conspiracy.

*3. EVIDENCE: conspiracy.*

We concede that it is not necessary on the one hand that such a conspiracy be shown by direct evidence, and that circumstantial evidence may be sufficient for the purpose. *Gardner v. Preston,* 2 Day, 205 (2 Am. Dec. 91); *State v. Thompson,* 69 Conn. 720 (38 Atl. Rep. 868); Roscoe, Criminal Ev. 430. But, on the other hand, it is well said that it is not enough that the evidence

*4. SAME.*

introduced tends to raise a suspicion. "The humane presumption of the law is against guilt, and though a conspiracy must ordinarily be proved by circumstantial evidence, yet it is not to be forgotten that the charge of conspiracy is easily made.  *  *  *  Mere suspicion, possibility of guilty connection, is not to be received as proof in such a case, and especially in such a case, because, when the connection is proved, the acts and declarations of others become evidence against the party accused." *Benford v. Sanner*, 40 Pa. 9 (80 Am. Dec. 545, 549). And see *People v. Stevens*, 68 Cal. 113 (8 Pac. Rep. 712).

We reach the conclusion that, had the trial court required that the evidence tending to show the conspiracy between Levich and defendant be introduced before allowing the declarations of Levich to be proven, and no further evidence of the fact had been introduced than appears in this record, it would have been error to overrule defendant's objection to the introduction of such declarations, for, whatever may be the rule in some States, we have recognized the rule here to be that the sufficiency of the proof of conspiracy, to justify introduction of the declarations of one conspirator against another, in the first instance, is to be determined by the trial judge ruling on the admissibility of such declarations. *State v. Nash*, 7 Iowa, 347, 384; *State v. Crofford*, 121 Iowa, 395. And this is the general rule. *Burke v. Miller*, 7 Cush. 547, 550; *People v. Parker*, 67 Mich. 222 (34 N. W. Rep. 720, 11 Am. St. Rep. 578); *Hunter v. Commonwealth*, 7 Gratt. 641 (56 Am. Dec. 121); Abbott, Trial Evidence (2d Ed.) 238. Therefore the court should not have left it to the jury to say in the first instance whether or not there was sufficient evidence of conspiracy, aside from the declarations of Levich, to justify them in considering such declarations in determining whether defendant was guilty of the crime.

Even if the court had exercised a proper discretion in allowing the declarations of Levich to be shown on the promise

*5. DECLARATIONS OF CO-CONSPIRATOR: admissibility.*

of the prosecution to introduce evidence *aliunde* the conspi-
**6. DECLARA-TIONS OF CO-CONSPIRA-TOR: failure to prove conspiracy.** racy, on failure of the State to subsequently make a *prima facie* showing as to the existence of the conspiracy the court should have stricken out the evidence as to Levich's declarations, and not submitted such evidence to the jury; and, after the defendant had objected to the admission of Levich's declarations on the ground that no proper foundation had been laid, the court on its own motion, when the failure to make out a *prima facie* case of conspiracy became apparent, should have directed the jury not to consider the declarations, although no motion to strike was interposed by the defendant at the conclusion of the evidence. *Jenkins v. State,* 35 Fla. 737, 827 (18 South. Rep. 182, 48 Am. St. Rep. 267, 289). But, instead of excluding this evidence from the consideration of the jury, the court by the instructions permitted them to consider it.

We think there is another good reason why the declarations of Levich should have been excluded from the considera-
**7. DECLARA-TIONS OF CO-CONSPIRA-TOR: admissibility.** tion of the jury. What Levich said, as testified to by the witnesses, was, in substance, that he had a grudge or grievance against Finkelstein, and that he had hired defendant to do him an injury. This declaration was not made in furtherance of the unlawful plan; it had no relevancy to the carrying out of that plan; but it was a mere narrative of a fact, made by Levich upon his own responsibility, and not purporting in any way to represent the defendant. The rule, as usually stated, with reference to the admissibility of the declarations of one conspirator as against another, is that such declarations are admissible only where they are made pending the conspiracy, and in furtherance of its unlawful purpose. *State v. Crofford,* 121 Iowa, 395; *People v. Parker,* 67 Mich. 222 (34 N. W. Rep. 720, 11 Am. St. Rep. 578); *Spies v. People,* 122 Ill. 1 (17 N. E. Rep. 898, 3 Am. St. Rep. 320, and note 487); *McKenzie v. State,* 32 Tex. Cr. R. 568 (25 S. W. Rep. 426, 40 Am. St. Rep. 795); *McCaskey v. Graff,* 23 Pa. 321

(62 Am. Dec. 336). It is true that in many, if not all the cases cited, the rule as thus stated is invoked to exclude declarations made after the conspiracy had been completed or abandoned, with reference to what took place while the conspiracy was in existence, but in principle the same reasons are applicable to declarations made while the conspiracy is pending, but not in furtherance of the unlawful purpose. The declarations of one conspirator are admissible against another on the theory that each is acting for all — that is, on the principle of agency — and certainly an alleged conspirator is not to be charged with statements made by another which have no relation to the carrying out of the common design. The fact appears to be that Levich made the declarations to which the witnesses testified in a spirit either of bravado, or, as one of the witnesses says, in a joking way, and his declarations were not taken seriously, nor did they apparently receive any attention until after the death of Finkelstein, when it was sought through them to connect defendant with the crime. If these declarations were of any significance, they were much more incriminating as against Levich himself than as against defendant. It is also to be noticed that some of the declarations to which the witnesses testified were made at a time prior to any connection or relation between Levich and defendant, so far as the other evidence in the case tends to establish it. Of course, declarations of Levich made prior to the formation of the conspiracy, and not in furtherance of any plan with which defendant was shown to have been connected, were not admissible.

If it should be contended that there was sufficient evidence to warrant the jury in convicting defendant, and that 8. SUBMISSION OF IMPROPER EVIDENCE. the jury must be presumed not to have taken the declarations of Levich into account, in view of the instructions of the court that they should not do so unless they found from the other evidence that a conspiracy was established, then we have to say, in the first place, that the defendant was entitled to the verdict of the jury as to his

guilt, free from any prejudice that might reasonably arise from the submission to them of this improper evidence. " Without the illegal testimony, the jury may not have found the verdict for the State; this testimony may have made the complement of proof which satisfied their minds. In that case the defendant would have been convicted upon illegal evidence. This court cannot determine what quantity of evidence was lawfully sufficient to authorize the verdict." *State v. Westfall,* 49 Iowa, 328, 332. In the very nature of things this evidence was most prejudicial, and, if improperly admitted, it is impossible to say that it may not have been made the very foundation of the verdict against the defendant. In the second place, the other evidence connecting the defendant with the commission of the crime is far from conclusive. Two witnesses testify to seeing defendant and another person, who was not identified by either of them, in the alley where the crime was committed, shortly before its commission, but there was testimony tending to impeach these witnesses as to their credibility, one of them by evidence tending to show that he was not in East Des Moines at the time, and the other by evidence, not only to show her bad moral character, but also to show that her testimony was inconsistent with previous statements. The testimony of these two witnesses constitutes absolutely the only evidence, aside from the previous declarations of Levich, tending in any way to connect the defendant with the crime. If the case had been submitted to the jury on this evidence alone, and a verdict against the defendant had been reached, we do not say that we should have considered it to be without sufficient support. What we do say is that it is not so conclusive of defendant's guilt that we are justified in ignoring the submission of the case on incompetent evidence which may have led the jury to reach a verdict which they would not have been satisfied to render had the incompetent evidence not been before them.

Other alleged errors of the court in the admission of evidence are urged, but the questions involved may be easily

disposed of on a new trial .by the application of the rule as to the admissibility of acts and declarations of third persons which we have indicated in this opinion.

For the errors pointed out, the case is remanded for a new trial.— REVERSED.