STATE OF IOWA v. D. F. CAINE, Appellant.

**Conspiracy:** INDICTMENT: DUPLICITY. Where the separate counts of an indictment for conspiracy charge but one confederation it is not bad for duplicity, and the State will not be required to elect on which count it will rely prior to the introduction of its evidence, even though different objects or purposes are stated.

**Conspiracy:** PROOF. The fact of conspiracy need not be proven by direct evidence, but proof of concert of action in carrying out a criminal purpose will support conviction.

**Evidence:** ACTS OF CO-CONSPIRATORS. After a *prima facie* case of conspiracy has been made out, the acts of numerous persons engaged in carrying out the purpose of the conspiracy may be shown, though not committed in the presence of defendant.

**New trial:** MISCONDUCT OF JURORS. For jurors to read, during the trial, local newspaper accounts of the evidence and proceedings in the cause is misconduct authorizing a new trial, although the jurors testify that they were not influenced in their action thereby.

*Appeal from Woodbury District Court.*— HON. GEORGE W. WAKEFIELD, Judge.

THURSDAY, APRIL 11, 1907.

DEFENDANT and one McGuire were jointly indicted for conspiracy. On a separate trial defendant was found guilty and sentenced. From this sentence he appeals.— *Reversed and remanded.*

*Wilbur Owen* and *C. A. Irwin*, for appellant.

*Chas. W. Mullan*, Attorney-General, and *U. G. Whitney*, County Attorney, for the State.

McCLAIN, J.— I. The indictment, in two counts, was as follows:

The grand jury of the county of Woodbury, in the name and by the authority of the State of Iowa, accuse D. F. Caine and Charles McGuire of the crime of conspiracy, committed as follows:

Count I. The said D. F. Caine and. Charles McGuire and divers other persons to the grand jury unknown, on or about the 1st day of August, 1904, in the county of Woodbury and State of Iowa, unlawfully, willfully, and feloniously did conspire, agree, and confederate together with the fraudulent and malicious intent and purpose wrongfully,

feloniously, and unlawfully to injure the person of H. H. Hawman, S. A. Huntley, Ned Brown, John Stausberry, William Eberline, F. E. Haight, John Limebach, George Buckland, and Charles A. Wagner, and divers other persons to the grand jury unknown, by as aforesaid unlawfully assaulting, striking, beating, and wounding the said H. H. Hawman, S. A. Huntley, Ned Brown, John Stausberry, William Eberline, F. E. Haight, John Limebach, George Buckland, and Charles Wagner, and divers other persons to the grand jury unknown.

Count II. And the grand jury of the county of Woodbury, in the name and by the authority of the State of Iowa, with no intent or purpose of charging any offense or crime other than the offense and crime charged in count I above, but solely in order to meet the testimony, further alleges: That the said D. F. Caine and Charles McGuire, together with divers other persons to the grand jury unknown, on or about the 1st day of August, 1904, in the county of Woodbury and State of Iowa, unlawfully, willfully, and feloniously did conspire, confederate, and agree together with the fraudulent and malicious intent and purpose wrongfully to do an act injurious to the public police, and to injure the business, property, and rights of the property of the Cudahy Packing Company, a corporation organized under the laws of the State of Illinois and doing business at Sioux City, Iowa, in the killing of live stock and the packing and preserving of the products thereof, the particular means agreed upon to carry out, execute, and accomplish said conspiracy as aforesaid, by the said D. F. Caine and Charles McGuire, and said divers other persons to the grand jury unknown, being to unlawfully beat, wound, strike, assault, inflict bodily injury and harm upon, and threaten with bodily harm and injury, and to use profane and vulgar and indecent language toward, all persons in the employ of the said Cudahy Packing Company, or who might seek employment of or from the said Cudahy Packing Company, or who might have business engagements with the said Cudahy Packing Company, at their place of business in Sioux City, Iowa, or who might have business engagements in or around the building or property of the said company at Sioux City, and especially to use and employ the particular means above set out toward one C. W. Jackson, who was then and there

sheriff of the said county, and H. H. Hawman and S. A. Huntley, who were then and there deputy sheriffs of said county, all of said officers being then and there engaged in guarding and protecting as peace officers the property and employés of the said Cudahy Packing Company at Sioux City, Iowa, all of said means so agreed upon by said defendants and divers other persons to the grand jury unknown, being with the malicious purpose and intent and design on the part of the said Charles McGuire, D. F. Caine, and divers other persons to the grand jury unknown, wrongfully to harass and annoy said company and to frighten its said employés and prospective employés from entering or remaining in the employ of said company, and thereby prevent said company from successfully carrying on its said business, causing loss of property and damage to the business of said company, and with the malicious intent, purpose, and design to hinder, delay, and prevent said company from hiring or securing employés, and from successfully carrying on their said business.

The court overruled a motion for defendant made after the impaneling of the jury and before the introduction of evidence requiring the State to elect upon which count of the indictment it would proceed, and error is assigned on this ruling. The ground relied on in the motion was that the counts charged different and separate acts, and that it was not made to appear by averment that the acts charged in the first count and those charged in the second count were parts of one and the same offense or transaction, as required by Code, section 5284, which prohibits the charging of more than one offense in the same indictment, but permits one offense to be " charged in different forms to meet the testimony." Each count charges a conspiracy. If the two counts charge different conspiracies, the indictment is bad for duplicity, and defendant was entitled to have the State elect on which of them it would proceed; while if they charge the same conspiracy, in different forms, the motion was properly overruled.

The first count charges an agreement and confederation to injure the persons of certain named individuals by assault-

ing, beating, and wounding them.    The second count charges
an agreement and confederation to do an act
injurious to the public police, and to injure
the business and property of a corporation
named, by assaulting, beating, wounding, threatening with
bodily harm, and using profane and vulgar language toward
certain persons named and others described, by classes, as per-
sons employed by, seeking employment from, and having
business engagements with said corporation.    The two counts
are substantially identical in charging the offense alleged in
each·as that of conspiracy to assault, beat, and wound certain
persons.    The offenses of conspiracy thus charged may be the
same as to the fact of agreement and confederation, for in
each count the confederation is charged to have been with Mc-
Guire and divers other persons to the grand jury unknown.
The identity of such other persons could be established by
the same evidence under either count.    The offenses may be
the same, also, as to the acts contemplated, for under each
evidence would be admissible to show a purpose to assault,
beat, and wound Hawman, Huntley, and others who are spe-
cifically named or described to the grand jurors as unknown
in the first count, and named or described as belonging to cer-
tain described classes of persons in the other.    Proof of as-
saulting, beating, and wounding Hawman or Huntley would
tend to establish the purpose of the conspiracy charged in
either count.    Further identity as to the persons to be thus in-
jured or as to the nature of the injuries to be inflicted was not
necessary, provided the same confederation was pointed out
in the two counts, for under either of them proof that the
purpose included other injuries to other persons would simply
enlarge the scope of the purpose.    The ultimate object of
the confederacy to injure is different, but that is immaterial,
for the primary object of injuring in a specified manner cer-
tain persons would make the confederation criminal regard-
less of what the ultimate object may have been.    Under
either count the State might therefore have proceeded to

1. CONSPIRACY:
   indictment:
   duplicity.

prove a confederation to assault, beat, and wound Hawman and Huntley, and an election between the two counts could not properly have been required. Moreover, various intents are specified in the alternative in Code, section 5059, defining the crime of conspiracy, and all or any two or more of these might be charged conjunctively in one indictment, and there is no objection to charging one or more of such intents in one count, and others in another, if the same act of confederation is referred to in each. Therefore, even though the intent stated in the second count was different from that stated in the first count, it does not necessarily follow that there was duplicity in the indictment requiring an election.

The real controversy before us, then, as counsel on the two sides agree, is as to whether the two counts refer to one and the same confederation, for if but one confederation is alleged, the object to be accomplished and the means to be employed may be any of those specified in the section of the Code, provided, of course, they are sufficiently described to bring them within the statutory definition of the offense. Identity of description in the two counts would not alone relieve the State of the duty to elect, for even under one count the State could not proceed to prove two different objects or purposes, although each might be within the statutory definition. On the other hand, dissimilarity of object or purpose would not necessitate election before the introduction of evidence, for the State would have the right to proceed to prove any one of the objects or purposes charged and could be required to elect only when it appeared that it was seeking to prove two or more distinct acts of confederation. The words relied on by the State, as showing that the confederation charged in the second count is the same as that charged in the first, are the following, at the beginning of second count: " And the grand jury, . . . with no intent or purpose of charging any offense or crime other than the offense and crime charged in Count I, above, but solely in order to meet the testimony, further alleges." We think the plain and evident

purpose in using these words was to advise defendant that the act of conspiracy described in the second count was the same act of conspiracy charged in the first. The only possible ambiguity is in the use of the words " offense or crime." As here used, these words are synonymous. Either may, in general, be used to describe a class of acts defined as a crime of one name or description, as burglary, larceny, or conspiracy, or one act within any such class. But as here used, either word must be understood as referring to a particular act, and not any one of a class of acts constituting a crime of the same name. The offense or crime referred to, as charged in the first count, is not any act constituting the crime of conspiracy in general, but the specific confederation charged in the first count, as constituting a conspiracy. *State v. Kennedy,* 63 Iowa, 197.

It is true that the language of an indictment is to be carefully scrutinized to determine whether it does with sufficient definiteness state the facts constituting the offense charged, i. e., whether it does charge the facts " in such manner as to enable a person of common understanding to know what is intended." Code, sections 5280, 5289. But the language of the indictment " is properly to be construed in the sense in which the party framing the charge must be understood to have used it, if he intended his accusation to be consistent." 1 Bish. New Cr. Proc. section 510, quoting from 1 Chitty, Crim. Law, 231. And see *State v. Grant,* 86 Iowa, 216, 223; *State v. Dow,* 73 Iowa, 587. We reach the conclusion, therefore, that the two counts do not necessarily refer to separate acts of confederation, but may relate to the same act, and that defendant must have understood from the language used that they were intended by the pleader to refer to one and the same act; and the State was not therefore bound to elect before any evidence was introduced, upon which of the two counts it would rely for conviction.

II. The sufficiency of the evidence to establish a conspiracy is questioned by counsel for appellant. The evidence

tended to show that during a strike of the employés of the
Cudahy Packing Company, defendant, who
was then keeper of a saloon near the com-
pany's packing house, acted in conjunction with certain of
the strikers in threatening violence to and inflicting injuries
upon other employés of the company. Proof of concert of
action in carrying out a criminal purpose or plan is circum-
stantial evidence of a confederation to effect such purpose or
join in such plan. *State v. Gadbois,* 89 Iowa, 25; *State v.
Stevens,* 67 Iowa, 558; *Kelley v. People,* 55 N. Y. 565 (14
Am. Rep. 342). An actual agreement to enter into a con-
spiracy need not be proven by direct evidence to warrant
conviction for such crime. *State v. Crab,* 121 Mo. 554 (26
S. W. 548). Counsel for appellant rely on what was said
by this court in *State v. Weaver,* 57 Iowa, 730; *State v.
Walker,* 124 Iowa, 414; *State v. Crofford,* 121 Iowa, 395.
But those cases related to the admissibility as against de-
fendant of acts and declarations of another without sufficient
evidence to make out a *prima facie* case of conspiracy. Here
a *prima facie* case of conspiracy was made out by proof of
acts and declarations of defendant himself. The question
as to whether there was a conspiracy was therefore properly
submitted to the jury, and there is no complaint as to the
correctness of the instructions.

III. Many rulings of the court as to the admissibility
of evidence tending to show acts of violence not committed in
defendant's presence are questioned. But when a *prima
facie* case of conspiracy is made out, evidence
of acts and declarations of the conspirators,
though not in the presence of each other, if in the carrying
out of the common purpose, is admissible. *State v. McGee,*
81 Iowa, 17; *State v. Row,* 81 Iowa, 138; *Sand v. Common-
wealth,* 21 Grat. 871; *Chapman v. State,* 45 Tex. Cr. R. 479
(76 S. W. 477); 12 Cyc. 436. When large numbers of
persons are engaged in carrying out the purpose of a con-

*Marginal notes:* 2. CONSPIRACY: proof. 3. EVIDENCE: acts of co-conspirators.

spiracy to which the defendant is a party, the acts of each in carrying out that common purpose may be shown.

IV.   In support of a motion for new trial, affidavits of jurors and others were presented showing beyond question that while the trial was in progress, members of the jury, while not in the jury box, read the local newspapers containing long accounts of the trial, and at least to some extent read these accounts, especially the headlines; and it was contended that this was such misconduct as to require the setting aside of the verdict.   By Code, section 5383, relating to criminal proceedings, the court is required to admonish the jury, whether allowed to separate or not, " that it is their duty not to permit any person to speak to or communicate with them on any subject connected with the trial  .   .   .; and that they should not converse among themselves on any subject connected with the trial, or form or express an opinion thereon, until the cause is finally submitted to them."   The reading of newspaper accounts of and comments upon the trial is thus prohibited by the letter and the spirit of the statute.   The accounts were written in a somewhat sensational manner, though not perhaps objectionable as news intended for the general public.   They were not confined to verbatim reports of the testimony of the witnesses, but to a large extent consisted of condensed accounts of what was testified to by the witnesses, and statements of the facts involved, some of them not shown by any evidence in the case.   However fair these accounts may have been, and for the most part they were unobjectionable as a current report of the proceedings, they were communications with reference to the case which the jurors should not have received.   The only discussion of the evidence which the jurors should have an opportunity to consider before they are secluded for deliberation on their verdict are discussions in open court by the attorneys of each party in the presence of those for the other, in which errors of statement may be corrected and improper inferences may

4. NEW TRIAL: misconduct of jurors.

be controverted.  The jurors should not subject themselves to the danger of misconception and error which must exist if outside persons, without the checks incident to an orderly trial and discussion in court, are allowed to sum up the evidence, emphasize its particular features, and suggest the conclusions to be drawn therefrom.  It is scarcely necessary to cite authorities in support of so plain a proposition.  New trials have frequently been granted for such misconduct.  A few cases are sufficient to show the views of courts in general on the question.  *State v. Walton,* 92 Iowa, 455 ; *Cartwright v. State,* 71 Miss. 82 (14 South. 526) ; *People v. Leary,* 105 Cal. 486 ; (39 Pac. 24) ; *People v. Stokes,* 103 Cal. 193 (37 Pac. 207, 42 Am. St. Rep. 102) ; *People v. McCoy,* 71 Cal. 395 (12 Pac. 272) ; *Walker v. State,* 37 Tex. 366 ; *Carter v. State,* 9 Lea (Tenn.) 440 ; *State v. Robinson,* 20 W. Va. 713 (43 Am. Rep. 799) ; *Farrer v. State,* 2 Ohio St. 54 ; *Mattox v. United States,* 146 U. S. 140 (13 Sup. Ct. 50, 36 L. Ed. 917) ; *Meyer v. Cadwalader* (C. C.), 49 Fed. 32.

Affidavits of the jurors were introduced on the part of the State to show that they were not influenced in their action by the accounts they read ; but it was not sufficient to show by them that they were not consciously influenced.  The unconscious influence of such accounts would be far more likely to affect the result than an influence of which they were conscious, and which they might the more readily resist.

The motion for a new trial on the ground of misconduct of the jury should have been sustained, and the judgment must therefore be reversed, and the case remanded for a new trial.— *Reversed* and *remanded.*