STATE OF IOWA v. J. E. GILMORE, Appellant.

**Criminal law:** ABORTION : COCONSPIRATOR : ACTS AND DECLARATIONS : 1 EVIDENCE. The victim of an abortion may be a coconspirator of the perpetrator of the offense and her acts and declarations may be shown on the trial of the accused; but proof thereof must relate to the statements or acts made or done pending the conspiracy and in promotion of its object or design.

**Same:** ORDER OF PROOF. Ordinarily and the better practice is to re-2 quire *prima facie* proof of conspiracy before receiving evidence of acts or declarations of a coconspirator; but the order of proof is largely discretionary with the trial court, and it is not necessarily erroneous to receive evidence of such acts and declarations in advance of *prima facie* proof of conspiracy, on the assurance of counsel that the same will be produced.

**Same:** CONSPIRACY: EVIDENCE. An alleged conspiracy can not be established by the acts and declarations of one of the parties alone; and before these may be considered against a coconspirator it must be shown in some way that he had at that time joined in the enterprise.

**Same.** Where evidence has been received of the acts and declarations of a coconspirator relating to a time prior to the formation of a conspiracy it should be stricken on motion, or the jury should be instructed not to consider it.

**Same.** It is only the acts or declarations of a conspirator which were done and made in furtherance of the conspiracy that are admissible against a coconspirator, and not a narrative of past transactions or events having no connection with what was being done to promote the common design.

**Same.** Where a crime has been committed as the result of an alleged conspiracy evidence of transactions occurring between the conspirators prior to the formation of the common design is inadmissible.

**Same:** HEARSAY EVIDENCE. The state is under some obligation to an accused not to offer evidence which is clearly hearsay, as in the instant case, and intended solely to create or intensify prejudice against him.

*Appeal from Jones District Court.*—HON. F. O. ELLISON, Judge.

WEDNESDAY, JULY 5, 1911.

THE accused was convicted of murder in the second degree, and appeals.—*Reversed.*

*Jamison, Smyth & Hann,* for appellant.

*George Cosson,* Attorney-General, for the State.

LADD, J.—The defendant is accused of having caused the death of Gertrude Jackson by committing an abortion on her, not necessary to save her life. She was unmarried, about twenty-five years of age, and died July 14, 1909.

Rulings under which evidence of her acts and declarations; not in the presence of defendant, was received are assigned as errors. These evidently were based on the theory that she had entered into an arrangement with the accused to cause a miscarriage, and, of course, if this were shown, whatever she may have done or said in promotion of the unlawful enterprise while it was pending was appropriate for the consideration of the jury.

The victim of an abortion may become a co-conspirator with the perpetrator of the offense, in which her acts and declarations done or made pending the alleged conspiracy, and in promotion thereof, may be proven on the trial of such perpetrator. *State v. Crofford,* 133 Iowa, 478; *State v. McGee,* 81 Iowa, 17; *State v. Caine,* 134 Iowa, 147; *State v. Crofford,* 121 Iowa, 395. But statements or acts of a co-conspirator, before the conspiracy was formed or after its termination, or not in promotion thereof, though provable as admissions against such co-conspirator, may not be introduced against an associate in the conspiracy, on trial therefor, or for a crime alleged to have been perpetrated in pursuance thereof. *State v. Crofford, supra.*

*1. CRIMINAL LAW: abortion: coconspirator: acts and declarations: evidence.*

To render such evidence admissible, two conditions are absolutely essential: (1) That the acts or declarations sought to be shown were done or made pending the conspiracy; and (2) they were in promotion of its object or design. *State v. McGee,* 81 Iowa, 17; *State v. Walker,* 124 Iowa, 414; *State v. Crofford,* 121 Iowa, 395.

Ordinarily there should be *prima facie* proof of the existence of a conspiracy, before evidence of any acts or declarations of a co-conspirator is received, but, as the order in which evidence shall be introduced is discretionary with the trial court, it is not necessarily error to allow evidence of such acts and declarations to be adduced in advance of *prima facie* proof, on assurance that this will be produced subsequently. *State*

*2. SAME: order of proof.*

*v. Mushrush,* 97 Iowa, 444; *State v. Grant,* 86 Iowa, 216. The better practice, however, is to require a *prima facie* showing of conspiracy before receiving such evidence. *State v. Walker,* 124 Iowa, 414; *State v. Wheeler,* 129 Iowa, 100. And this should always be done as a matter of fairness to the defendant unless there is some reason which seems persuasive to the court for changing the order of proof. On the assurance of the attorney for the state that proof of conspiracy subsequently would be made, evidence of what deceased did and said during the week preceding her death was received over timely objections by the accused. But no evidence whatever tending to show that defendant had ever met deceased, or communicated with her directly or indirectly, prior to the day before she died was adduced by the state. Nor does it appear that what he did on that day was owing to any arrangement or understanding with deceased. She was very sick, and he was called by her sister, with the knowledge of her father, and whatever he did apparently was without consulting her wishes.

The theory of the state seems to have been that the alleged conspiracy might be shown by declarations of the deceased alone. No authority so holding has been cited, and none can be found. Certainly nothing

3. SAME:
   conspiracy:
   evidence.

said in *State v. Crofford,* 133 Iowa, 478, warrants such a conclusion. There a letter written by the victim of abortion to her paramour, after the latter was shown to have entered into a conspiracy with the defendant therein, was held to be admissible in evidence as tending to establish her connection with the conspiracy; That is, that she was either joining in the enterprise of the other two, or entering into an unlawful arrangement with the one addressed. But no one will pretend that this letter alone implicated the defendant therein. Nor is there any ground for saying that the declarations of deceased alone tended to connect this defendant with any conspiracy.

As to him, these were in the nature of hearsay, until there was *prima facie* proof of some unlawful arrangement or agreement between them, in which event they were a part of the *res gestae*. Of course, such acts or statements of hers as tended to establish an unlawful combination between them might be shown, but this is not saying that these may be sufficient for that purpose. Before these may be considered against the accused, he must be shown in some way, by direct or circumstantial evidence, to have joined in the enterprise. "No man's connection with the conspiracy can be legally established by what others did in his absence, and without his knowledge and concurrence." *United States v. Babcock,* 3 Dill. 581 (Fed. Cas. No. 14,487). "To admit such declarations—such hearsay testimony—in proof of the conspiracy itself would in civil matters put every man at the mercy of rogues; and in charges of criminal conspiracy render the innocent the helpless victims of villainous schemes, supported and proved by prearranged and manufactured evidence of the promoters thereof." *People v. Irwin,* 77 Cal. 494 (20 Pac. 56); *Cuyler v. McCartney,* 40 N. Y. 221; *Blain v. State,* 33 Tex. Cr. R. 236 (26 S. W. 63); *State v. Weaver,* 57 Iowa, 730. As said, the state did not introduce any substantive evidence indicating that defendant had met deceased prior to July 13, the day before her death, or had had any communication with her, and therefore all declarations in promotion of an alleged conspiracy prior to that time appeared at the close of the state's evidence to have been erroneously received.

II. No motion to strike the evidence referred to was then interposed, and the defendant, in his own behalf, testified that he had met deceased at his office on Saturday July 10; that she told him she had been sent by another physician; was in trouble; and that he told her he could not take her case, and gave her no treatment. Even if from this and deceased's state-

4. SAME.

ments that she was going to the defendant's office on the day named, and subsequent statement that she had been there, in connection with other circumstances, were sufficient evidence from which a conspiracy might be inferred, all evidence of acts and declarations prior thereto should have been stricken on defendant's motion, or the jury warned not to consider it. See *State v. Walker, supra.* That such evidence was extremely prejudicial appears from a recital of that given by Mrs. Hotz, sister of the deceased. She testified that deceased had said to her on Monday, July 5, that she was going to see the defendant the next day; that Dr. King had sent her there and told her where his office was; that she was pregnant; and upon her return home, July 6, that she had been to defendant's office, and he had given her treatment and said he could help her; that it would be $50, and that she had paid him $10, and that he had told her to come back on Saturday. All this testimony, as it was of declarations prior to the possible finding · of the formation of a conspiracy, should have been excluded as hearsay.

III. Mrs. Hotz also testified that deceased left on Saturday, saying that she was going to see defendant. This evidence was admissible in connection with that of defendant that they did meet on that day. The witness proceeded by saying that on her return deceased reported that defendant had given her a treatment; had inserted a rubber, and had said that the rubber would bring on pains and bring about an abortion; that he had taken away part, and if the rest did not come to return Monday. All this is a mere recital of what deceased is said to have claimed had happened, and purported to be an account of a past transaction, and was inadmissible. Acts or declarations of a co-conspirator, to be admissible, must be in furtherance of the conspiracy; that is, in some measure or to some extent, it must aid or assist toward the consummation of the object of the

5. SAME.

conspiracy. *People v. Smith,* 151 Cal. 619 (91 Pac. 511).
Furtherance, as said in *Powers v. Commonwealth,* 114 Ky.
237 (70 S. W. 644), has a well-defined and generally
accepted meaning, which is "the act of furthering or help-
ing forward, or promotion, or advancement." A mere re-
lation of something already done for the accomplishment
of that object is not competent evidence against others, but
hearsay only. *People v. Davis,* 56 N. Y. 103; 1 Taylor,
Evidence, 530. As noted by the author last cited, declara-
tions which are either acts in themselves purporting to ad-
vance the objects of the criminal enterprise, or which ac-
company and explain such acts, are to be distinguished
from statements whether written or oral, which, though
made pending the plot, are mere narratives of acts or
measures which have already been done or taken. A co-
conspirator, in recounting past transactions or events hav-
ing no connection with what is being done in promotion
of the common design, can not be assumed to represent
those associated with him. Only such acts and declara-
tions as are done and made in accomplishing the object in-
tended can be said to have been authorized by the body of
conspirators as a whole. As said in *Moers v. Martens,* 8
Abb. Prac. (N. Y.) 257, the acts of the other conspirators
are admitted as evidence against each, upon the principle
that by the act of conspiracy together they have jointly as-
sumed to themselves, as a body, the attribute of individu-
ality, so far as regards the prosecution of the common de-
sign, thus rendering whatever is done or said by any one,
in furtherance of that design, a part of the *res gestae,*
and therefore the act of all. It may be difficult, as was
observed in *Stewart v. Hanson,* 35 Me. 509, to determine
at all times when declarations shall be received as part of
the *res gestae.* But when they explain and illustrate it,
they are clearly admissible. Mere narratives of past
events, having no necessary connection with the act done,
would not tend to explain it. But the declaration may

properly refer to a past event as the true reason of the present conduct. See *Clinton v. Estes*, 20 Ark. 216.

The declarations that defendant had given deceased a treatment, and that he had removed a part, were mere recitals of what had happened, and in no manner evidenced present or future assistance in the way of promoting the conspiracy to cause an abortion. Had there been evidence that the rubber was being carried by deceased at the time when she is said to have talked about it, the declarations might be admissible as explanatory of what was then being done to carry out the object of the alleged conspiracy; but no such evidence had been adduced, and as what she is reported to have said was solely of a past transaction, and not in carrying out the common design alleged to have been formed, was not admissible.

IV. Eugene Newhard, who was responsible for her condition, took deceased to Monticello on Sunday, July 11, but did not accompany her to defendant's office. Defendant testified that she came, and that he examined her, found no foetal heart, but that there was a discharge of pus, accompanied with a strong odor, and that he did nothing more, and permitted her to remain in the office until evening. Newhard was allowed, over objection, to testify that in asking him to take her to Monticello she had told him that she had had two treatments, but did not say by whom; that in going to the buggy she walked as though suffering from cramps, and sat on the edge of the seat; that on the way home she told him she had taken chloroform and had been operated on, and the child removed. Under the rule as heretofore stated, all this evidence, save of how she walked and sat was of statements of past occurrences, and not admissible. Mrs. Hotz also was permitted to testify that on the following morning deceased related to her that defendant removed the parts while she was under chloro-

6. SAME.

form.    This evidence for like reasons should have been excluded.

V.    It appeared that Mrs. Hotz first requested Dr. King to attend deceased on Tuesday, July 13, but, as he declined, she telephoned from his office to defendant.    She

7. SAME: hearsay  testified to the conversation had with King
    evidence.      at the time.    The record leaves it doubtful whether proper objections were interposed, but without inquiring into this it will be enough to say, in view of another trial, that the evidence was hearsay, and of a character calculated to prejudice the defendant.    The state in a criminal cause is under some obligations to the accused, and one of these is not to offer evidence so clearly inadmissible that this is not debatable, and as appears for the sole purpose of creating or intensifying prejudice against him.    The testimony of the conversation of Mrs. Hotz with King is of this character, and there was no excuse for its introduction.    Much of Dr. Worthington's testimony was not properly received in rebuttal.    The criticism of instructions may be obviated on another trial, especially in clearly stating the theory of the defense and obviating the error in the fifteenth paragraph.    Stutsman v. Sharpless, 125 Iowa, 335.

Because of the errors pointed out, the judgment is reversed and the cause remanded.—Reversed.

DEEMER, J.—While concurring in the result and in what is said in all divisions of the opinion, save the third, I am so skeptical about what is said in that division as to withhold any concurrence therein.