**STATE of Iowa, Appellee,**

v.

**John Davis KIDD, Jr., Appellant.**

No. 58288.

Supreme Court of Iowa.

March 17, 1976.

James C. Dunbar, Waterloo, for appellant.

Richard C. Turner, Atty. Gen., Jim Robbins, Asst. Atty. Gen., and David Dutton, County Atty., for appellee.

Submitted to MOORE, C. J., and UHLENHOPP, REYNOLDSON, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

Defendant appeals conviction and sentence for robbery with aggravation in violation of § 711.2, The Code. The sole question is whether the trial court erred in overruling defendant's hearsay objection to certain evidence. We affirm the trial court.

The charge here was based on the same incident as was involved in *State v. Harmon,* 238 N.W.2d 139, Iowa, filed January 21, 1976. At about 7:00 p. m. on January 23, 1975, three black males wearing ski masks robbed at gunpoint the Shamrock Tap in Waterloo and several of its patrons. The State offered evidence that Corby Kidd, wife of defendant, had been in the tavern a few minutes before the robbery for the purpose of "casing it".

Evidence was received from witnesses to the robbery that two of its perpetrators had entered the tavern from the rear and one from the front. The robber who entered from the front knocked a man from a bar stool. Everyone in the tavern was directed to get down on the floor. One of the robbers wore a green military jacket.

Identification of the perpetrators of the robbery depended on circumstantial evidence. The State sought to prove defendant, Herman Harmon, and Bobby Cage were the three men who committed the robbery.

Before noon on the day involved defendant and Bobby Cage visited Blanche Hoosman. At about 2:30 p. m. Cage returned to the Hoosman home and borrowed a blue 1975 Maverick automobile. Between 5:00 and 6:00 p. m. Angela Love and Edgar Gibson drove in Gibson's car from Gibson's Waterloo apartment to Lindbergh's Tavern on Sumner Street, just off East Fourth Street, in Waterloo, looking for Cage. Gibson went into the tavern and came out with Cage, Harmon, and defendant and his wife. The group stood near the Gibson car and talked.

Then Gibson and Love went back home. Love testified that after about an hour they decided to go back and look for Cage because Gibson thought he should have arrived at the Gibson apartment before then. As they drove down East Fourth Street toward Lindbergh's they met Corby Kidd who was driving the blue Maverick. She told Gibson that Cage wanted him. Gibson followed her to a house in that area. They got there about five or ten minutes after seven.

Gibson entered the home and came out with Harmon, Cage, and defendant. They got in the Gibson vehicle and Gibson drove them to his apartment. Corby Kidd drove the Maverick there separately.

While Gibson sat in the living room with Harmon, Cage, and the Kidds, Love was cooking in the adjacent kitchen. It was then about 7:30 p. m.

Love gave the following testimony:

Q. Now, did you have occasion on that date and at that time to overhear a conversation from the living room involving these individuals whom you have named? A. Yes.

Q. Would you indicate to the jury what that conversation was?

MR. DUNBAR: Just a moment. I am going to object to this as calling for hearsay, and further, lack of proper foundation.

THE COURT: Overruled. You may answer.

MR. DUNBAR: Just a moment. I would call the Court's attention to the fact that there is no testimony from this witness as to the defendant's presence during this conversation.

THE COURT: Overruled.

MR. DUNBAR: There is no testimony that she can identify any conversation, the origin of the conversation.

THE COURT: Overruled.

\*     \*     \*     \*     \*     \*

A. Well, I overheard—I don't know who said it, but there was a conversation about somebody had hit somebody and knocked them off of a stool.

\*     \*     \*     \*     \*     \*

Q. Did you hear any further statements at that time? A. There was a statement made about a girl laying under a pool table screaming.

Q. Do you know exactly what the words were there? A. Just that there was a girl under the pool table screaming.

\*     \*     \*     \*     \*     \*

Q. Were there any other statements that you overheard from the kitchen at that time and place? A. Somebody said, "It works better with three people than two people."

Q. And any more statements that you overheard? A. No, I can't recall any.

Q. How long a period expired during the time that you overheard these statements? A. About a half hour.

Love testified the statements were not made by Gibson or Corby Kidd, but she was unable to identify the speaker.

At about 8:00 p. m. Gibson and Love prepared to take Harmon, Cage, and the Kidds to Cedar Rapids. Harmon, who was wearing a green military jacket, borrowed a coat from Gibson and left his jacket in the Gibson apartment. The group traveled to Cedar Rapids in the Gibson car, visited two homes there, and returned to Waterloo about midnight. They then separated.

Evidence was received without objection that Cage was later charged and pled guilty to the robbery. Clothing and weapons which the jury could find were used in the robbery were subsequently found in the basement of the Hoosman home.

No challenge is made to the sufficiency of the evidence to support jury submission of the case against defendant. The only question is whether the trial court erred in overruling defendant's hearsay objection to Love's testimony regarding the statements she overheard in the Gibson apartment after the robbery.

▮▮▮ The State contends defendant's hearsay objection was waived because it was not repeated each time Love was asked to repeat part of the conversation. Once a proper objection has been made and overruled, an objector is not required to make further objections to preserve his right on appeal when a subsequent question is asked raising the same issue. Repeated objections need not be made to the same class of evidence. *State v. Miller*, 229 N.W.2d 762, 768 (Iowa 1975); *State v. Miller*, 204 N.W.2d 834, 841 (Iowa 1973). The trial court was alerted to defendant's claim that any statement not shown to have been made by defendant would be inadmissible hearsay, and the court's ruling sufficiently informed defense counsel that additional objections on the same ground to testimony of the same kind would be to no avail.

Substantially the same evidence as challenged here was received in the Harmon trial without objection. *State v. Harmon*, supra, at 146. In that situation we held the evidence was part of the record and entitled to its natural probative force. However, in this case we must decide whether defendant's hearsay objection required exclusion of the evidence.

■ Defendant's objection specifically invoked the hearsay rule. Since the objection was overruled, defendant is limited here in his challenge of the court's ruling to the specific ground of his objection below. If the hearsay rule can be found inapplicable here under any theory, the ruling will be upheld. See *Porter v. Iowa Power and Light Company,* 217 N.W.2d 221, 231 (Iowa 1974).

■ In *State v. Miller,* 204 N.W.2d 834, 840 (Iowa 1973), we adopted the definition of hearsay in rule 801, Federal Rules of Evidence, which provides, " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." We have also followed rule 801 insofar as it excludes admissions from the definition of hearsay. *State v. Hamilton,* 236 N.W.2d 325, 330 (Iowa 1975); rule 801(d)(2), Federal Rules of Evidence.

■ We observed in *Harmon* that the statements would not be admissible as tacit admissions because we have rejected the tacit admission rule in criminal trials. *State v. Kelsey,* 201 N.W.2d 921, 927 (Iowa 1972). We did not foreclose admissibility of the statements as admissions on some other theory or under an exception to the hearsay rule.

■ The State contends the statements are admissible because made by a co-conspirator. When there is substantial evidence of a conspiracy, whether the offense charged is conspiracy or not, everything said by any conspirator in furtherance of the common purpose is deemed to have been said in behalf of all parties to the conspiracy. *State v. Dewey,* 220 N.W.2d 629, 631 (Iowa 1974). A statement by a co-conspirator of a party during the course and in furtherance of the conspiracy is thus admissible against the party as an admission. *State v. Blyth,* 226 N.W.2d 250, 269 (Iowa 1975); see rule 801(d)(2), Federal Rules of Evidence.

■ Two conditions must be met for this rule to be applicable. First, the statement must have been made during the pendency of the conspiracy. Second, it must have been in promotion of the object or design of the conspiracy. *State v. Gilmore,* 151 Iowa 618, 620, 132 N.W. 53, 54 (1911).

In the present case, there was substantial evidence that Harmon, Cage, defendant and his wife conspired to rob the Shamrock Tap. There was also substantial evidence that the conspiracy had not ended at the time of the conversation in the Gibson living room. The conversation took place within an hour of the robbery, the parties had not separated; their movements after the robbery had been secretive. Harmon had not yet disposed of the jacket he allegedly wore in the robbery. The record does not show the spoils had been divided.

■ Once a conspiracy has been shown, the burden is upon the conspirator to show it has ended. *United States v. Pugliese,* 153 F.2d 497 (2 Cir. 1945). A conspiracy to commit robbery does not necessarily end when the robbery has been committed; it may persist at least until the fruits of the crime have been divided. *Murray v. United States,* 10 F.2d 409, 411 (7 Cir. 1925). A conspiracy may also continue into a concealment phase. *Mares v. United States,* 383 F.2d 805, 810 (10 Cir. 1967), cert. denied, 394 U.S. 963, 89 S.Ct. 1314, 22 L.Ed.2d 564 ("The men were acting in concert to conceal the crime and to avoid detection. The spontaneous statements and acts of one were admissible against the other."); *Reed v. People,* 156 Colo. 450, 402 P.2d 68 (1965); 3 Wharton's Criminal Evidence, § 643 at 338–339 (Thirteenth Ed. 1973).

Here the first condition for admissibility of the statements was met. The trial court could find the conversation occurred before termination of the conspiracy.

■ A closer issue is presented regarding the second condition for admissibility. The requirement that a statement have been made in furtherance of the conspiracy was explained in *State v. Gilmore,*

supra, 151 Iowa at 623–624, 132 N.W. at 55–56, as follows:

"Acts or declarations of a co-conspirator, to be admissible, must be in furtherance of the conspiracy; that is, in some measure or to some extent, it must aid or assist toward the consummation of the object of the conspiracy. * * * A mere relation of something already done for the accomplishment of that object is not competent evidence against others, but hearsay only. * * * [D]eclarations which are either acts in themselves purporting to advance the objects of the criminal enterprise, or which accompany and explain such acts, are to be distinguished from statements, whether written or oral, which, though made pending the plot, are mere narratives of acts or measures which have already been done or taken. A co-conspirator, in recounting past transactions or events having no connection with what is being done in promotion of the common design, cannot be assumed to represent those associated with him. Only such acts and declarations as are done and made in accomplishing the object intended can be said to have been authorized by the body of conspirators as a whole."

Narrative declarations of past occurrences can be in furtherance of a conspiracy. *United States v. Imperial Chemicals,* 100 F.Supp. 504, 512 (S.D.N.Y.1951). In barring declarations which are "merely" narrative, the rule excludes utterances which are likely to be unreliable and self-serving because they result from premeditation and design. See *State v. Warren,* 242 Iowa 1176, 1184, 47 N.W.2d 221, 225–226 (1961).

■ It is not the purpose of the rule to exclude statements relating to the conspiracy uttered during the active life of the conspiracy under circumstances indicating reliability. The furtherance requirement is construed broadly with this in mind. *United States v. Overshon,* 494 F.2d 894, 899 (8 Cir. 1974), cert. denied, 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85. A narrative declaration is in furtherance of the conspiracy if it has some connection with what is being done in promotion of the common design.

■ Here, as we observed in *Harmon,* the conversation in the Gibson living room with all of the alleged conspirators present, within an hour of the robbery, may be viewed as a report to Gibson by the conspirators. Gibson was more than an innocent bystander to the events involved. He knew Cage and the others were up to something. The extent of his knowledge and culpability is not revealed. However, it is clear he expected Cage to come to his apartment after the robbery so additional plans could be carried out. Whatever the precise purpose of the report to Gibson, the statements obviously were made to advance the aims of the ongoing conspiracy in circumstances indicating their reliability. They were circumstantial and spontaneous rather than merely narrative. See *United States v. Mares,* supra, at 810.

Post-robbery statements were held admissible in analogous circumstances in *United States v. Cox,* 449 F.2d 679, 688 (10 Cir. 1971), where the court held admissible a tape-recorded telephone conversation between two alleged conspirators which occurred during the evening after a daytime bank robbery. During the conversation the men made statements inculpatory of themselves and Cox in recounting the day's events. The court held the conversation was so closely related to the day's events and the crime as to be an inseparable part of the conspiracy.

We believe the statements in the present case had a similar connection with the alleged conspiracy involved here. The statements were made in furtherance of the conspiracy within this requirement of the rule.

We hold the challenged evidence was admissible within the co-conspirator rule. The trial court did not abuse its discretion in overruling defendant's hearsay objection.

AFFIRMED.