[Crim. No. 1721. Second Appellate District, Division Two.—February 6, 1929.]

THE PEOPLE, Respondent, v. WALTER STRIDER et al., Defendants; GEORGE CRAWFORD, Appellant.

C. L. Belt and E. S. Green for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, and John D. Richer for Respondent.

WORKS, P. J.—The defendants were convicted of the crime of robbery. Defendant Crawford appeals from the judgment.

Evidence was adduced at the trial which tended to prove the following facts: Appellant and his co-defendant, Strider, hailed a taxicab, of which one Bates was the driver. Both entered the vehicle and one of them—the evidence does not show which—directed Bates to drive them to a certain street intersection. When the cab neared the place Bates asked at which corner the defendants desired to alight and "they" told him to turn down a certain street and stop at the third house on the left. When Bates reached the place indicated an automobile, with a man and woman seated in it, was found parked there, and "they"—his passengers—told him to drive further on. When he had gone 100 or 150 feet beyond the parked car "they" told him to stop. He did so, read his taximeter and remarked to Strider and appellant that the fare was a certain amount. Strider then said, the passengers apparently still being in the cab, "To hell with the fare. We want what you have got." Strider then pointed what looked like a pistol at Bates, and following this action placed it against his back. Strider then said to the driver, "Keep your back to us," and rifled his pockets, taking money and papers from them. Strider and Crawford then left the taxicab and walked away in the view of the man and woman in the parked car. These latter saw defendants at the trial and testified that in size—one of them being much taller than the other—and in the appearance of their apparel they resembled the two men seen walking from the taxicab. Appellant testified that at the trial he wore the same suit of clothes in which he was dressed the night the robbery was committed. Bates, when on the witness-stand, identified defendants as the two passengers, one of whom despoiled him of his money and papers. Immediately after the robbery Bates drove away and soon met a police officer. The two then went to the scene of the crime and proceeded on a search for the culprits. At about four blocks from the spot they saw a moving automobile, stopped it and found defendants in it.

It is contended by appellant that the *corpus delicti* was not proven, but the proof was so clearly made that the

point is hardly worthy of mention. ■ From something that is said in one of the briefs we infer that appellant entertains the view that a complete proof of the *corpus delicti* contemplates a showing that he committed the crime. If this is appellant's view he is in error in holding it. "To establish the *corpus delicti* it is not essential to show that the crime charged was committed by the defendant." (*People* v. *Rodway*, 77 Cal. App. 738 [247 Pac. 532].)

■ The point is also made that the evidence was insufficient to sustain the verdict against appellant. Two grounds are taken in support of this contention. It is first said that there was no sufficient identification of appellant as the person who was present with Strider in the taxicab when the robbery was perpetrated. Without reciting the specific evidence bearing upon the point, we are amply satisfied that the identification was sufficiently complete. ■ It is also contended that there was no evidence showing appellant's complicity in the crime, and authorities are cited to the effect that one who merely stands by and sees a crime committed may not be charged with a participation in it. But, within the meaning of those authorities, this was not a case of standing by. The two defendants hailed the taxicab together, entered it together and left it together. If it was Strider who ordered Bates to drive beyond the car parked before the house at which the driver had previously been told to stop, appellant, if he were innocent, must have regarded the circumstance as suspicious, and yet he made no comment upon it. Moreover, when Strider said to Bates that "we" want what you have got and ordered him to keep his back to "us," appellant heard what was said without demur, thus impressing upon the mind of Bates the fact that he was in the hands of two criminals instead of only one. If appellant had merely denied the right of Strider to use the plural pronouns, Bates might have called upon him, as an innocent and well-disposed citizen, for aid. After Bates had been despoiled of his property and Strider and Crawford had alighted from the cab, the latter made no attempt to separate himself from the active perpetrator of the robbery. On the contrary, he, together with Strider, entered another automobile, appellant thus joining his companion in an attempt to flee from the scene of the crime.

Appellant's conduct was not that of an innocent man. The evidence was sufficient to show his complicity in the robbery.

■ When appellant's mother was on the witness-stand it was developed that her son had been working for one McClellan. This testimony came at the close of the direct examination. The cross-examination began thus: "Q. Where was he working? A. For McClellan, the contractor, because this Mr. Corval [who had not been mentioned during the direct examination] gave him a job, because he goes to him and gets him a job. . . . Q. . . . He works for Mr. Corval, is that correct? A. Mr. Corval gets him a job. Q. Who is Mr. Corval?" An objection was interposed to this latter question, it was overruled and appellant now claims that the ruling was error. We think it was not. The question was harmless. There was nothing in it to indicate to the court what harmful answer, if any, it might bring forth. The witness replied, however: "He is a parole officer of some kind." Appellant objects strenuously that the question forced the witness to make an answer which indicated that appellant had once been in the toils of the law, thus degrading and prejudicing him in the minds of the members of the jury, but it is evident that the objection is not really to the question but to the answer. Yet there was no motion to strike the answer. The trial court was given no opportunity to pass upon the real question which is presented here. It was the duty of appellant, under these circumstances, to move to strike the answer (*People* v. *Smith*, 151 Cal. 619 [91 Pac. 511]), and as he did not do so the objection which he now urges against the question is not available to him. In the case cited the supreme court said: "There was nothing on the face of the question to indicate that an answer to it might not be relevant, material, and competent evidence, and hence it was not improper to overrule the objection urged against the inquiry upon the only ground urged—namely, that it was irrelevant, immaterial, and incompetent. The question only appeared to be vulnerable to all these objections when the answer to it was given, and as that was the first and only time it appeared to be so, it was the duty of the defendant, to move to strike the answer out, and having failed to do so, no error can be predicated on the overruling of the objection."

█ Appellant requested an instruction which contained a statement that in considering the question of innocence or guilt the jury might "properly consider that the defendants when apprehended were unarmed," and it was refused. We think the refusal was proper. █ Instructions should not "bear upon the weight to be attached to a particular piece of evidence, as their effect may be either to convey to the jury the impression that the judge is suspicious of the testimony against which the in.. ...iction is particularly directed, or give added weight to the testimony, depending upon the nature of the comment" (8 Cal. Jur. 294).

█ Appellant asked for an instruction containing this sentence: "If, after consideration of the whole case, any juror should entertain a reasonable doubt of the guilt of the defendant, it is the duty of such juror, not to vote for a verdict of guilty, nor to be influenced in so voting for the single reason that a majority of the jury should be in favor of a verdict of guilty." The trial judge gave the instruction, but changed the quoted sentence to read thus: "If after consideration of the whole case any juror should reach a definite conclusion as to the guilt or innocence of the defendants or either of them, it is the duty of such juror not to vote for a contrary verdict, nor to be influenced in so voting for the single reason that a majority of the jury or all of the jurors should be in favor of such a verdict." We think the alteration was proper.

Judgment affirmed.

Craig, J., and Thompson, Ira F., J., concurred.