Filed 7/31/25  P. v. Ward CA2/5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DOMINIC WARD, <br><br> Defendant and Appellant. | B336224 <br><br> (Los Angeles County Super. Ct. No. BA502954) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig E. Veals, Judge.  Affirmed.

Jonathan Soglin and Maria Leftwich, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Daniel C. Chang, Deputy Attorney General, for Plaintiff and Respondent.

A jury found defendant and appellant Dominic Ward (defendant) guilty of two counts of assault with a deadly weapon. We are asked to decide claims of evidentiary error and asserted ineffective assistance of counsel: whether the trial court erred in allowing witnesses to testify the assault victim appeared to be dying and recited a message to tell his mother, and whether defendant's trial attorney should have requested the court give certain instructions on eyewitness identification testimony.

## I.  BACKGROUND

### A.     *The Offense Conduct, as Established by the Evidence at Trial*

On October 30, 2021, at approximately 2:00 a.m., Juan Garcia-Quintero (Garcia-Quintero), Sulaymaan Muhammad (Muhammad), and Jason Cohetero (Cohetero) arrived outside the Spring Tower Lofts in Los Angeles following a night out celebrating Halloween.  When they arrived, they saw several fights occurring in the vicinity, but they did not know any of the people fighting—one of whom was defendant.  They entered the Spring Tower Lofts to attend an "after party."

Garcia-Quintero, Muhammad, and Cohetero took the elevator to the floor of the after party, but the fire alarm went off, forcing them to return to the lobby and exit the building.  While waiting, Garcia-Quintero, Muhammad, and Cohetero saw defendant standing roughly five or ten feet away and yelling "Six Street Crip" and "I'm a Crip" toward them.  The three men were confused and concerned as they were not involved in any gangs, and they subsequently reentered the lobby.  Defendant followed them in, and video surveillance footage shows him holding a reflective object behind his back.

2

Garcia-Quintero, Muhammad, and Cohetero were standing near the elevators when Garcia-Quintero and Cohetero saw defendant charge toward them with a knife. Defendant stabbed Muhammad in the neck, and Garcia-Quintero attempted to defend himself and his friends by pushing defendant away and trying to disarm him—when doing so, defendant slashed Garcia-Quintero's arm. Cohetero then grabbed defendant's arm, but defendant was much stronger and used the knife to scrape Cohetero's collarbone, cutting his shirt in the process. The elevator doors then opened and a group of people pushed defendant away from Cohetero and beat him (defendant).

Los Angeles Police Department Officer Vanessa Reyes arrived in the area of the lofts in response to a call about an assault with a deadly weapon at approximately 2:30 a.m. Officer Reyes noticed defendant (who appeared to be unconscious) lying on the floor of the lobby and she gave first aid to Garcia-Quintero and Muhammad while waiting for an ambulance to arrive. While Officer Reyes was applying pressure to Muhammad's neck, she at one point thought he "passed away in [her] arms." Around that same time, Garcia-Quintero also heard Muhammad say, "Bro, tell my mom I'm good. Love you. This might be the last day."[1]

Garcia-Quintero and Muhammad were later transported to the hospital, and Muhammad survived. Defendant was taken into custody.

---

[1]     We detail *post* how these statements were made during the examination of Garcia-Quintero and Officer Reyes at trial, and the defense objections on Evidence Code section 352 (section 352) grounds.

*B.     Instructions, Verdict, and Sentencing*

After the presentation of evidence at trial, the court gave the jury a number of instructions concerning evaluating witness testimony including CALJIC No. 2.20, Believability of Witnesses; CALJIC No. 2.21.1, Discrepancies in Testimony; CALJIC No. 2.21.2, Witness Willfully False; CALJIC No. 2.22, Weighing Conflicting Testimony; and CALJIC No. 2.27, Sufficiency of Testimony of One Witness.  The jury was also instructed on reasonable doubt generally (with CALJIC No. 2.90).  The defense did not request or object to the absence of CALJIC Nos. 2.91 (Burden of Proving Identity Based Solely on Eyewitnesses) and 2.92 (Eyewitness Identification) in the charge to the jury.[2]

---

[2]     CALJIC No. 2.91 provides:  "The burden is on the People to prove beyond a reasonable doubt that the defendant is the person who committed the crime with which [he] [she] is charged.  [¶] If, after considering the circumstances of the identification [and any other evidence in this case], you have a reasonable doubt whether defendant was the person who committed the crime, you must give the defendant the benefit of that doubt and find [him] [her] not guilty."

In pertinent part, CALJIC No. 2.92 provides:  "Eyewitness testimony has been received in this trial for the purpose of identifying the defendant as the perpetrator of the crime[s] charged.  In determining the weight to be given eyewitness identification testimony, you should consider the believability of the eyewitness as well as other factors which bear upon the accuracy of the witness' identification of the defendant."  The instruction goes on to enumerate more than 10 factors including "[t]he opportunity of the witness to observe the alleged criminal act and the perpetrator of the act"; [t]he stress, if any, to which the witness was subjected at the time of the observation"; "[t]he witness' ability, following the observation, to provide a description of the perpetrator of the act"; "[w]hether the witness

4

After receiving these instructions, the jury convicted defendant on two counts of assault with a deadly weapon.  (Pen. Code, § 245, subd. (a)(1).)  The jury also found true multiple alleged aggravating circumstances, including allegations that the assaults involved great violence, great bodily harm, threat of great bodily harm, and other acts disclosing a high degree of cruelty, viciousness, and callousness.  The trial court sentenced defendant to four years in state prison: the middle term of three years on one of the assault counts and a consecutive one-year term (one-third the middle term) for the other count.

## II.  DISCUSSION

Both of the arguments defendant makes for reversal of the judgment against him are unavailing.

Defendant's evidentiary error contention, that the trial court should have excluded testimony from Officer Reyes and Garcia-Quintero that could provoke an emotional response from the jurors, is partially forfeited and otherwise meritless.  The argument is forfeited as to Garcia-Quintero's testimony about Muhammad's message for his mother in case he died because defendant never moved to strike that testimony.  The argument lacks merit as to Officer Reyes's testimony that Muhammad appeared to be dying because aspects of that testimony were relevant and not unduly prejudicial and the remainder of the testimony was harmless.

Defendant's ineffective assistance of counsel contention, which is predicated on the decision not to request eyewitness

was able to identify the alleged perpetrator in a photographic or physical lineup"; and [w]hether the witness had prior contacts with the alleged perpetrator."

5

testimony instructions, fails under the test for resolving such contentions on direct appeal, which is "difficult" for a defendant to satisfy. (*People v. Mickel* (2016) 2 Cal.5th 181, 198 ["a reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had 'no rational tactical purpose' for an action or omission"].) Defendant does not satisfy the test here because we can easily hypothesize reasons why his trial attorney would have rationally decided to forgo requesting the instructions: his attorney may have believed the other instructions the court gave were sufficient and his attorney may have concluded aspects of the missing instructions would not have been helpful to defendant's case.

### A. There Was No Evidentiary Error Justifying Reversal
#### 1. Additional background

During Garcia-Quintero's testimony about the aftermath of defendant's stabbing in the lobby, the prosecutor asked, "How does [Muhammad's] medical condition progress based on your observations?" Garcia-Quintero answered, "Once we were . . . on the floor, . . . [Muhammad] just was not talking okay. Like, he was just, like, 'Bro, tell my mom I'm good. Love you. This might be the last day.'" At that point, defendant's trial counsel objected on section 352 grounds. The trial court responded, "Okay. Next question."

Later, during Officer Reyes's testimony on the same topic, she testified Muhammad was "in shock" while she was attending to him. The prosecutor asked her, "What's shock?" Officer Reyes replied, "Lack of blood flow through the body. He had just went through a traumatic event, so his condition was just—he wasn't—

6

at one point I honestly thought I lost him." The following exchange then occurred:

> [Prosecutor]: When you say at one point I honestly thought I lost him, what do you mean by that?
> [Officer Reyes]: I thought he had passed away in my arms because—
> [Defense Counsel]: Objection, [section] 352.
> [The Court]: I'll overrule.
> [Prosecutor]: You were saying?
> [Officer Reyes]: So I thought he had passed away as I'm applying the pressure to his neck because he just looked at me like no reaction. He wasn't moving, and I was trying to just have him talk, the entire time talk to me about his mom. I even asked him to—if he wanted to say anything to his mom on my body worn [camera] just in case he did pass away.
> [Defense Counsel]: Objection, [section] 352.
> [The Court]: Okay. Overruled. Next question.

> *2. Analysis*

Defendant's claim of evidentiary error as to Garcia-Quintero's testimony about Muhammad's message for his mother is forfeited. Defense counsel objected only after the jury had heard the testimony in question, and there was no motion to strike the testimony (nor even any attempt to clarify whether the court had sustained or overruled the belated objection). (*Tate v. Fratt* (1896) 112 Cal. 613, 619; *People v. Glass* (1954) 127 Cal.App.2d 751, 753 ["It is the general rule that when an unexpected answer of a witness, which could not be anticipated by objection to the question, contains inadmissible and

7

prejudicial matter, a motion to strike it out is the proper remedy"]; *People v. Strider* (1929) 96 Cal.App. 632, 636 ["It was the duty of appellant, under these circumstances, to move to strike the answer [citation], and, as he did not do so, the objection which he now urges against the question is not available to him"]; see also *People v. Lewis* (2008) 43 Cal.4th 415, 481 ["Failure to press for a ruling on a motion to exclude evidence forfeits appellate review of the claim . . ."].)

Defendant did adequately object to certain portions of Officer Reyes's testimony about her perception that Muhammad suffered a near-death injury, so that issue is preserved. But it does not warrant reversal. The testimony was relevant to establish the grievous nature of Muhammad's injury, which bears on use of a deadly weapon and the infliction of great bodily injury, and it was no more likely to elicit an emotional response from the jury that would overcome their factfinding function than the testimony about the neck stabbing itself—which obviously was correctly admitted. (*People v. Karis* (1988) 46 Cal.3d 612, 638 ["'In applying section 352, "prejudicial" is not synonymous with "damaging"'"]; see also *People v. Jones* (2011) 51 Cal.4th 346, 372 ["'[T]he prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense'"].) Insofar as Officer Reyes also testified to additional details that were less relevant (i.e., talking to Muhammad about his mother and asking if he wanted to say anything to her on the officer's body worn camera), we do not believe the testimony contributed to the verdict obtained. As we have explained, the jury properly heard testimony that defendant grievously wounded Muhammad by stabbing him in the neck, and the complained-of elaboration on

8

the effects of that stabbing added virtually nothing to the undue prejudice calculus—particularly when the defense at trial was only one of mistaken identity.[3]

> B.   *Defendant Has Not Shown His Attorney Was Constitutionally Deficient by Not Requesting CALJIC Nos. 2.91 and 2.92*

Defendant believes his trial attorney was constitutionally ineffective because there was no reason not to request the court instruct the jury with CALJIC Nos. 2.91 and 2.92 when his identity as the culprit was "the only disputed issue" in this case. On direct appeal, we presume that "'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy. Defendant thus bears the burden of establishing constitutionally inadequate assistance of counsel.'" (*People v. Carter* (2005) 36 Cal.4th 1114, 1189.) A reviewing court will therefore reject an ineffective assistance of counsel claim "'unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation.'" (*Ibid.*)

The record does not disclose why defendant's attorney did not request CALJIC Nos. 2.91 and 2.92, so the question becomes whether there could be no satisfactory explanation for not

---

[3]   Our conclusion disposes of defendant's related due process contention that admission of the evidence rendered his trial fundamentally unfair. (*People v. Cudjo* (1993) 6 Cal.4th 585, 611; *People v. Hawthorne* (1992) 4 Cal.4th 43, 58; see also *People v. Albarran* (2007) 149 Cal.App.4th 214, 229.)

requesting the instructions. There are, however, easily hypothesized satisfactory explanations. For one, counsel may have believed (particularly as to CALJIC No. 2.91, but also as to CALJIC No. 2.92) that the other instructions the court gave were sufficient and provided all that was necessary to argue the mistaken identity defense. Precedent so holds. (*People v. Alcala* (1992) 4 Cal.4th 742, 803; *People v. Blair* (1979) 25 Cal.3d 640, 663 ["[T]hese instructions were sufficient to inform [the jury] that the prosecution had the burden of proof on [the issue of identity] and that defendant should be acquitted if they had a reasonable doubt on the matter"].) In addition, as to CALJIC No. 2.92, defense counsel may have determined giving that instruction would not have been helpful to the defense because the prosecution could have emphasized several of the considerations identified in that instruction (e.g., the opportunity of the witness to observe the perpetrator, or the witness's ability to subsequently provide a description or identification of the perpetrator) to argue the evidence showed defendant was the assailant.

C.    *No Cumulative Prejudice Warrants Reversal*
We have relied on a holding of no prejudice only in one relatively minor respect regarding Officer Reyes's testimony. There is accordingly no possibility of cumulative prejudice warranting reversal.

DISPOSITION

The judgment is affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, Acting P. J.

We concur:



MOOR, J.



KIM (D.), J.


11